IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLIA
SOUTHERN DIVISION
IN ADMIRALTY

JAN BRITT LYNN, ADMINISTRATRIX )
OF THE ESTATE OF MEGAN ALLISON )
LYNN, )
 )
 )
             Plaintiff, )
 )   Civil Case No. 7:22-cv-47-D
 )
vs. )
 )
FERSTER ELECTRIC, LLC )
 )
             Defendant. )

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

This cause coming on to be heard and being heard before the undersigned United States District Judge sitting without a jury at the November 21, 2022 session of the United States District Court for the Eastern District of North Carolina in Raleigh on Plaintiff's Motion for Default Judgment. Appearing for Plaintiff, Jan Britt Lynn, Administratrix of the Estate of Megan Allison Lynn, is Stevenson L. Weeks.

From the pleadings and the evidence, the COURT FINDS THE FOLLOWING FACTS:

1. The parties are properly before the Court.

2. The court has jurisdiction of the parties and of the subject matter.

3. This is a case within the court's admiralty and maritime jurisdiction. (DE 1)

4. Jan Britt Lynn is a citizen and resident of Columbus County, North Carolina and is Administrator of the Estate of Megan Allison Lynn, deceased, and is, in all respects the proper party to prosecute the Decedent's claims and the claim of the Plaintiff. (DE 1)

5. Ferster Electric, LLC is a limited liability company organized and existing under the laws of the State of North Carolina and transacts business in the state of North Carolina. (DE 1)

6. On March 21, 2022 Jan Britt Lynn as Administrator of the Estate of Megan Allison Lynn instituted this action in this Court in civil action number 7:22-cv-47-D seeking damages from Ferster Electric, LLC for the death of Megan Allison Lynn (DE 1).

7. Default of the Defendant, Ferster Electric, LLC was entered in 7:22-cv-47-D on September 21, 2022 (DE 16). Motion for Default Judgment was filed on September 22, 2022 (DE 17).

8. Once a default is entered, the defaulting party loses status and standing to contest factual allegations in the Complaint. Upon entry of default, the facts alleged by the Plaintiff in her Complaint are deemed admitted.

9. From the pleadings in this matter the Court finds the following facts:

A. At all times material herein, the Defendant's managing member and registered agent, Matthew Ferster was the owner and operator of a 2014 model Skeeter Performance fishing boat, 18 feet in length and powered by a 175-horsepower outboard motor. (DE 1)

B. Defendant Ferster Electric, LLC provided funds and monetary support for the upkeep, maintenance and use of the Skeeter Performance fishing boat. (DE 1)

C. At all times relevant hereto, Matthew Ferster was a managing member of Defendant Ferster Electric, LLC. (DE 1)

2

D.  The Skeeter Performance fishing boat was utilized in the furtherance of Defendant, Ferster Electric, LLC's business and was utilized to entertain and foster better relationships between employees of Defendant, Ferster Electric, LLC. (DE 1)

E.  At all times relevant hereto, the Skeeter Performance fishing boat was being operated in the furtherance of Defendant, Ferster Electric, LLC's business and for the benefit of Defendant, Ferster Electric, LLC. (DE 1)

F.  Matthew Ferster was accompanied by another employee of Defendant Ferster Electric, LLC when the Skeeter Performance fishing boat was placed on the Waccamaw River. (DE 1)

G.  In southeastern North Carolina, the Waccamaw River is the dividing line between Columbus and Brunswick Counties. In this area the Waccamaw River is a narrow, meandering river that is deep in many areas and is frequently used by area boaters. Near the Town of Pireway the North Carolina Wildlife Resources Commission maintains a boating access area known as the Pireway access area. (DE 1)

H.  On March 29, 2020 the Plaintiff's intestate, Megan Allison Lynn, along with Garrett Smith and Jennifer Haynes went boating on the Waccamaw River on a motor boat operated by Travis Reed Suggs and owned by Pamela Fowler Suggs. (DE 1, 21-1)

I.  On Sunday, March 29, 2020 at approximately 5:30 p.m. the vessel operated by Travis Reed Suggs and occupied by Plaintiff's intestate, Megan Allison Lynn, others was approximately two-thirds of a mile south of the Pireway access area and was traveling in a northwardly direction toward the access area on the eastern side of the Waccamaw River and was on the south side of a bend in the river. (DE 1, 21-1)

3

J. On Sunday, March 29, 2020 at approximately 5:30 p.m. the Defendant, Matthew Ferster, was operating his 17' Skeeter Performance fishing boat in the vicinity of the Pireway access area and was traveling in a southwardly direction toward the bend in the river. (DE 1, 21-1)

K. At the same time, Justin Spivey had departed the Pireway access area in his vessel. The Ferster vessel and the Spivey vessel were traveling south with the Ferster vessel traveling on the east side of the river and the Spivey vessel on the west side of the river. Both vessels were running side by side and eventually the Ferster vessel pulled ahead of the Spivey vessel and entered the bend in the river at a high rate of speed.

L. As the Ferster vessel entered the bend in the river it was traveling on the east side of the river at a speed in excess of 40 miles per hour and was rapidly approaching the Suggs vessel which was traveling on the east side of the river in the opposite direction. (DE 1, 21-1)

M. The operator of the Suggs vessel, Travis Reed Suggs, saw the Ferster vessel approaching and began waving to draw attention to his vessel. The Ferster vessel failed to change course or reduce speed and struck the port bow of the Suggs vessel and traveled over the Suggs vessel, killing Megan Allison Lynn, Jennifer Hayes and Garrett Smith. (DE 1)

N. Funds from Defendant Ferster Electric, LLC were utilized to pay for supplies and materials related to the use of the Skeeter Performance fishing boat on the date and at the time of the aforesaid vessel collision resulting in the deaths of Garrett Smith, Megan Allison Lynn and Jennifer Elizabeth Hayes. (DE 1)

O. At all times relevant hereto, Matthew Ferster was operating the Skeeter Performance fishing boat as an agent, employee or servant of Defendant, Ferster Electric, LLC

and on the business of Defendant at the time of the aforesaid vessel collision resulting in the deaths of Garrett Smith, Megan Allison Lynn and Jennifer Elizabeth Hayes. (DE 1)

P. Defendant, Ferster Electric, LLC utilized the Skeeter Performance fishing boat for business purposes on the date and at the time of the aforesaid vessel collision resulting in the deaths of Garrett Smith, Megan Allison Lynn and Jennifer Elizabeth Hayes. (DE 1)

Q. The vehicle utilized to transport the Skeeter Performance fishing boat to the Waccamaw River on the date of the aforesaid vessel collision resulting in the deaths of Garrett Smith, Megan Allison Lynn and Jennifer Elizabeth Hayes contained advertising signage on the front of the vehicle in furtherance of Defendant, Ferster Electric, LLC's business. (DE 1)

R. At all times material to this action, Defendant, Ferster Electric, LLC, acted as the *pro hac vice* charterer of the Skeeter Performance fishing boat and Defendant used the Skeeter Performance fishing boat for the purposes of its business. (DE 1)

S. Matthew Ferster was well known to Defendant, Ferster Electric, LLC, as the primary operator of the Skeeter Performance fishing boat and particularly, Defendant, Ferster Electric, LLC, knew that Matthew Ferster had consumed alcoholic beverages on the date of, and prior to, the aforesaid vessel collision resulting in the deaths of Garrett Smith, Megan Allison Lynn and Jennifer Elizabeth Haynes. (DE 1)

T. Defendant, Ferster Electric, LLC, knew, or should have known, that Matthew Ferster was likely to operate the Skeeter Performance fishing boat under the influence of alcohol and otherwise in violation of the Inland Rules of Navigation at the time and place of the aforesaid vessel collision resulting in the deaths of Garrett Smith, Megan Allison Lynn and Jennifer Elizabeth Haynes. (DE 1)

5

U.  Defendant, Ferster Electric, LLC, had the duty under all the circumstances to prevent Matthew Ferster from operating the Skeeter Performance fishing boat while under the influence of alcohol and otherwise in violation of the Inland Rules of Navigation. (DE 1)

V.  Defendant, Ferster Electric, LLC, breached the aforesaid duties. (DE 1)

W.  The negligence of Defendant, Ferster Electric, LLC, and its managing member, Matthew Ferster, was a proximate cause of the death of Plaintiff's intestate, Megan Allison Lynn. (DE 1)

10.  Megan Allison Lynn died on March 29, 2020 of multiple blunt force trauma as a result of a boat collision with ejectment which occurred on the Waccamaw River in Brunswick County, North Carolina. (DE 21-2).

11.  Megan Allison Lynn was born in 1998 in Columbus County, North Carolina and was 21 years of age at the time of her death on March 29, 20220. (DE 21-3)

12.  Prior to her death on March 29, 2020 she was in excellent health and was not suffering from any affirmaties.

13.  She graduated from Whiteville High School in Columbus County, North Carolina in June 2016 and attended Wake Tech Community College in Raleigh for one year. Due to pregnancy she did not return to Wake Tech but returned to her hometown of Whiteville.

14.  In 2017 Megan gave birth to twin boys, JAL and JCL. Megan was not married to the children's father and cared for and raised her children from the time of their birth as a single mother. (DE 21-4, 21-5, 21-7)

15.  After the birth of her children, Megan attended Southeastern Community College in Whiteville, North Carolina and became a pharmacy assistant and worked part-time for Liberty Medical.

6

16. Megan's twins were born premature and required specialized treatment and were in a neonatal extensive care facility at New Hanover Medical Center in Wilmington, North Carolina. Megan would travel daily to Wilmington to assist in caring for her children.

17. Both children have been diagnosed with mild cerebral palsy with one of the children requiring physical therapy. One of the children has been diagnosed with hydrocephalus, a build-up of fluid in the cavities deep within the brain, and sees a neurologist on a regular basis.

18. Megan was very responsible and took excellent care of her children's needs even though she was regularly employed.

19. Megan worked full time at County Boy Outfitters, a sporting goods store and part time, two to three evenings per week, as a waitress at a local restaurant to provide for her children.

20. At the time of her death, she was employed as an office assistant with J.L. Powell and Company (Ball Fisher Properties) in Whiteville, North Carolina and was being trained to take over the position of office manager in the near future with a substantial increase in pay. (DE 21-2)

21. Megan's life centered around her twins. She attended to their needs, provided their housing, food, clothing and miscellaneous expenses. She took pride in their grooming, dressing them identically and sought to teach them discipline, manners and respect. She showered them with her love and affection.

22. As a result of the untimely death of their mother, JAL and JCL have been deprived of the services, care, protection and assistance of their mother, Megan Allison Lynn.

23. As a result of the untimely death of their mother, JAL and JCL have been deprived of their mother's society, companionship, comfort, guidance and kindly offices and all the things that the decedent did in her role of mother that is not covered by one of the other categories.

7

24. The Estate of Megan Allison Lynn incurred funeral expenses as a result of her tragic death in the amount of $12,733.75. (DE 21-6)

25. Megan Allison Lynn's 2019 Income Tax Return indicated that her gross income for 2019 was $12,811.00.

26. At the time of her death, Megan Allison Lynn, had a life expectancy of 59.6 years (DE 21-9, page 20 of 65, age 21-22).

27. Ward Brian Zimmerman, Ph.D., MBA, CSSC prepared an appraisal of the economic losses of Megan Allison Lynn due to her March 29, 2020 death. The appraisal includes losses associated with Ms. Lynn's earnings, future earning capacity, replacement of fringe benefits and household services, projected forward. Those earnings, future earnings, benefits and household services were then discounted to today's dollars. (DE-21-11, page 2 of 21)

28. It is the opinion of Ward Brian Zimmerman, Ph.D., MBA, CSSC to a reasonable degree of economic certainty that Megan Allison Lynn's lost future earnings and replacement of fringe benefits, less her personal consumption, over her work life expectancy (age 65) reduced to present value would be the sum of $1,740,509.00. (DE 21-11, page 15 of 21 and 5 of 21)

29. It is the opinion of Ward Brian Zimmerman, Ph.D., MBA, CSSC to a reasonable degree of economic certainty that Megan Allison Lynn has sustained a loss of household services in the amount of $888,387.00 as a result of her death on March 29, 2020. (DE 21-11, pages 16 of 21 and 5 of 21)

30. It is the opinion of Ward Brian Zimmerman, Ph.D., MBA, CSSC to a reasonable degree of economic certainty that the economic impact related to the death of Megan Allison Lynn has resulted in a pecuniary loss of $2,628,896.00. (DE 21-11, page 5 of 21)

31. The present pecuniary loss to the Estate of Megan Allison Lynn to her next of kin, JAL and JCL is the amount of $2,628,896.00.

32. At the time of their mother, Megan Allison Lynn's death, JAL and JCL were two (2) years of age and each had a life expectancy of 72.7 years. (DE 21-9, page 18 of 65, age 2-3)

33. The monetary value of the deceased, Megan Allison Lynn, to her next of kin, JAL and JCL is determined by the shorter of the two life expectancies. In other words, when the expectancy of a next of kin is shorter than that of a deceased, the monetary value is determined by the shorter of the two life expectancies.

34. As the life expectancies of JAL and JCL are longer than that of their deceased mother the present monetary value of the of the deceased is the measure of damages, without reduction.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact the Court concludes as a matter of law:

1. This Court has subject matter jurisdiction pursuant to Article III, §2, clause 1 of the Constitution of the United States and its statutory corollary, 28 U.S.C. §1333(1).

2. The Court has jurisdiction of the parties.

3. The parties are properly before the Court.

4. This is a case within the court's admiralty and maritime jurisdiction.

5. Jan Britt Lynn is a citizen and resident of Columbus County, North Carolina and is Administrator of the Estate of Megan Allison Lynn, deceased, and is, in all respects the proper party to prosecute the Decedent's claims and the claim of the Plaintiff.

6. Ferster Electric, LLC is a limited liability company organized and existing under the laws of the State of North Carolina and transacts business within this District.

7. Ferster Electric, LLC by vicarious liability and respondeat superior is liable for the negligence of its officer and employee, Matthew Ferster, in causing the wrongful death of Megan Allison Lynn on March 29, 2022.

8. The Estate of Megan Allison Lynn is entitled to recover damages from Ferster Electric, LLC for the wrongful death of Megan Allison Lynn.

9. Damages for wrongful death under the General Maritime Law as supplemented by the North Carolina Wrongful Death Act, N.C. Gen. Stat. §28A-18-2 may include: Pain and suffering, reasonable funeral expenses, the present monetary value of the decedent to her next of kin, the services, protection, care and assistance of the deceased, whether voluntary or obligatory to her next of kin. The damages may also include the loss of society, companionship, comfort, guidance, kindly offices and advice of the decedent to her next of kin.

10. The Estate of Megan Allison Lynn has incurred reasonable funeral expenses in the amount of $12,733.75 which it is entitled to recover from the Defendant, Ferster Electric, LLC.

11. The Estate of Megan Allison Lynn has sustained a pecuniary net loss of $2,628,896.00 for the loss of income and household services which it is entitled to recover of the Defendant, Ferster Electric, LLC.

12. The children of Megan Allison Lynn, JAL and JCL, have lost the services, protection, care and assistance of their mother, Megan Allison Lynn, and they are entitled to recover from the Defendant, Ferster Electric, LLC, for these losses.

13. The children of Megan Allison Lynn, JAL and JCL, have lost the society, companionship, comfort, guidance, kindly offices and advice of their mother, Megan Allison Lynn, and they are entitled to recover from the Defendant, Ferster Electric, LLC for these losses.

14. The Court finds that the sum of $2,500,000.00 per child is adequate compensation for the children's, JAL's and JCL's, loss of the services, protection, care and assistance of their mother, Megan Allison Lynn and the loss of society, companionship, comfort, guidance, kindly offices and advice of their mother, Megan Allison Lynn.

15. Plaintiff, Jan Britt Lynn, Administratrix of the Estate of Megan Allison Lynn, shall recover for the Estate and its beneficiaries from Ferster Electric, LLC its funeral expenses and the present monetary value of Megan Allison Lynn to her infant children JAL and JCL in the amount of $7,641,629.75.

16. That the cost of this action plus pre-judgment interest are taxed against the Defendant.

SO ORDERED. This 22 day of November, 2022.

JAMES C. DEVER III
United States District Judge